CASE NO. 22-11433-AA

---

# UNITED STATES COURT OF APPEALS

*for the*

# ELEVENTH CIRCUIT

---

DEMETRIC KING,

*Plaintiff/Appellant*,

-v.-

CITY OF SYLVESTER, GEORGIA and RAYMOND DRENNON, in his individual capacity,

*Defendants/Appellees*.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
CASE NO. 1:20-cv-00080-LAG
(Hon. Leslie Abrams Gardner)

---

# INITIAL BRIEF OF APPELLANT

---

EDWARD D. BUCKLEY
J. KYLE BROOKS
BUCKLEY BEAL LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
(404) 781-1100

*Counsel for Appellant Demetric King*

Demetric King v. City of Sylvester, Georgia et al.

Docket No. 22-11433-AA

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and Eleventh Circuit Rule 26.1, the undersigned counsel of record verifies that those persons or entities listed below have or may have an interest in the outcome of this case:

1) Brooks, J. Kyle – counsel for Appellant Demetric King

2) Buckley Beal LLP – counsel for Appellant Demetric King

3) Buckley, Edward D. – counsel for Appellant Demetric King

4) Chambless, Higdon, Richardson, Katz & Griggs, LLP – counsel for Appellees/Defendants and counsel for former-Defendants Autron Hayes and Anson Evans

5) Charter Oak Fire Insurance Company

6) City of Sylvester, Georgia – Appellee/Defendant

7) Clay, Frances L. – counsel for Appellees/Defendants and counsel for former-Defendants Autron Hayes and Anson Evans

8) Drennon, Raymond – Appellee/Defendant

9) Evans, Anson – former-Defendant

10) Gardner, Leslie A. – United States District Judge

11) Hayes, Autron – former-Defendant

12) King, Demetric – Appellant/Plaintiff

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Plaintiff-Appellant Demetric King respectfully requests oral argument in this case to facilitate and enhance an exchange between counsel and the Court to determine whether the District Court erred in granting Appellees' Motion for Summary Judgment. The District Court committed reversible error by failing to apply correct legal standards. Specifically, the District Court ignored overwhelming evidence of discrimination sufficient to overcome Appellees' summary judgment motion under the "convincing mosaic" standard outlined in *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011). The District Court also misinterpreted this Court's decisions of *Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019) and *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016). The analysis of Appellant Demetric King's claims involves questions of law that require deep analysis of facts, which the District Court did not fully undertake and in which the District Court erred. An understanding of the facts underlying the ultimate questions of law would be aided by oral argument.

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF CONTENTS........................................................................ ii

TABLE OF CITATIONS ........................................................................v

JURISDICTIONAL STATEMENT .................................................... vii

STATEMENT OF THE ISSUES....................................................................1

STATEMENT OF THE CASE.......................................................................4

I.      COURSE OF PROCEEDINGS AND DISPOSITION BELOW ...................4

II.     STATEMENT OF FACTS ...........................................................6

        A.    King's employment with the City Police Department . ......................6

        B.    The City hires Drennon . ......................................................7

        C.    The City's and Drennon's actions leading up to King's demotion ......8

        D.    King files an EEOC Charge and takes FMLA leave . ........................16

        E.    A citizen makes a Facebook post, and King is fired ..........................18

        F.    Drennon made racist comments in the workplace . ...........................26

III.    STANDARD OF REVIEW.......................................................................26

IV.     SUMMARY OF ARGUMENT....................................................................27

V.      ARGUMENT AND CITATION OF AUTHORITIES .................................28

Demetric King v. City of Sylvester, Georgia et al.

Docket No. 22-11433-AA

A.   Legal standard to establish a claim for race discrimination under Title VII and 42 U.S.C. §§1981, 1983 .......................................................28

1.  McDonnell Douglass ....................................................29

2.  The "convincing mosaic" and mixed-motive standards. ...............30

B.   The District Court erred in concluding that King failed to show a genuine issue of material fact for trial on his race discrimination claims under *McDonnell Douglas* .................................................31

1.  King identified a valid comparator. ..............................32

2.  King presented evidence demonstrating that Appellees' claimed reasons for termination were pretextual.........................................36

C.   The District Court erred in concluding that King failed to show a genuine dispute of material fact on his race discrimination claims under the "convincing mosaic" and mixed-motive theories .........................42

1.  The District Court misconstrued evidence surrounding Drennon's departmental reorganization..........................................43

2.  The District Court failed to consider evidence showing that Appellants' claimed reasons for demoting King were pretextual and discounted evidence of Drennon's racial bias, White's racial bias, and Drennon's transfer of King's former duties to a white man. ..45

D.   Legal standard to establish a claim for retaliation under Title VII, 42 U.S.C. §1981, and FMLA ...............................................50

E.   The District Court erred in granting summary judgment to Appellees on King's retaliation claims .............................................52

1.  King made out a *prima facie* retaliation case under Title VII and §1981.............................................................52

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

2. King presented evidence showing that the May 30, 2019 incident was pretext to justify his unlawful termination.............................55

F.    The District Court erred in granting summary judgment on King's punitive damages claim ........................................................56

VI.   CONCLUSION..............................................................................57

CERTIFICATE OF COMPLIANCE ........................................................60

CERTIFICATE OF SERVICE .................................................................61

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253 (11th Cir. 2010) ...29, 30

*Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006) ......................................................47

*Bechtel Const. Co. v. Sec. of Labor*, 50 F.3d 926 (11th Cir. 1995) .................51, 52

*Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160 (11th Cir. 2010) ..........................51

*Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791 (11th Cir. 2000) ...................................................................................................50, 51, 53

*Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249 (11th Cir. 2012)..................51

*Christopher v. Gannett Satellite Information Network, Inc.*, 2007 WL 1626099 (M.D. Fla. Jun. 5, 2007) .........................................................................................54

*Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346 (11th Cir. 1999) .........................51

*Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305 (11th Cir. 2001) ...............26

*Gary v. Hale*, 212 Fed. Appx. 952 (11th Cir. 2007) ...............................................54

*Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261 (11th Cir 2008)........................52

*Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286 (11th Cir. 2006)....50, 51, 53, 54

*James v. City of Montgomery*, 823 Fed. Appx. 728 (11th Cir. 2020)...............28, 29

*Jenkins v. Nell*, 26 F.4th 1243, 1251 (11th Cir. 2022) ......................................47, 48

*Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261 (11th Cir. 2017) ...50

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

*Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019) ..... i, 1, 29, 32, 33

*Lewis v. City of Union City, Ga.*, 934 F.3d 1169 (11th Cir. 2019) ...................30, 31

*Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016) ......... i, 2, 29, 31

*Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836 (11th Cir. 2000) ..........28

*Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286 (11th Cir. 1998)............................48

*Shannon v. National Railroad Passenger Corp.¸* 774 Fed. Appx. 529 (11th Cir. 2019) ....................................................................... 29, 31, 50, 51, 52, 54

*Silverman v. Bd. Of Educ. Of City of Chi.*, 637 F.3d 729 (7th Cir. 2011) ........30, 31

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011)........... i, 1, 30, 48

*Wesolowski v. Napolitano*, 2 F.Supp.3d 1318, 1341 (S.D. Ga. Feb. 27, 2014) ......54

**Statutes & Other Authorities:**

*28 U.S.C. §1291* .................................................................................................. vii

*28 U.S.C. § 1331* ................................................................................................. vii

*29 U.S.C. §2612(a)(1)(D)* ...................................................................................50

*29 U.S.C. §2615(a)(1)* ..........................................................................................4

*29 U.S.C. §2615(a)(2)* ..........................................................................................4

*29 U.S.C. §§12201 et seq.* .....................................................................................4

*42 U.S.C. §1981* ....................................................iii, 2, 4, 5, 27, 28, 41, 50, 52, 55

*42 U.S.C. §1983* ...................................................... iii, 2, 4, 5, 28, 56, 57

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

# JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. §1291 because this is an appeal of a final decision of the United States District Court for the Middle District of Georgia that disposes of all of the parties' claims. The District Court had federal question jurisdiction under 28 U.S.C. § 1331. Appellant timely appealed from the District Court's March 31, 2022 Order granting Appellees' Motion for Summary Judgment [Doc. 68] and Judgment [Doc. 69] by filing a Notice of Appeal on April 25, 2022 [Doc. 71].

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

## STATEMENT OF THE ISSUES

The issues to be decided upon appeal include:

A.  Whether the District Court erred in determining that a white supervisor within the Sylvester Police Department, Lt. Doug Brooks, was not a proper comparator to Appellant Demetric King, who is Black, under *Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019).

B.  Whether the District Court erred in finding that Appellant Demetric King failed to show the existence of a genuine dispute of material fact as to pretext, under the *McDonnell Douglas* framework, with respect to his claims based upon his termination.

C.  Whether the District Court erred in granting summary judgment to Appellees on Appellant Demetric King's race discrimination claims premised upon his demotion and termination when King showed a genuine issue of material fact under the "convincing mosaic" standard outlined in *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011) where the City Manager who appointed the Police Chief, the Police Chief decision maker, and the investigator who's biased report prompted Plaintiff's termination had demonstrated racial bias by use of racial slurs and comments pejorative to African-Americans.

1

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

D.  Whether the District Court erred in granting summary judgment to Appellees on Appellant Demetric King's race discrimination claims premised upon his demotion and termination under the "mixed-motive" theory of liability outlined in *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016).

E.  Whether the District Court erred in finding that Appellant Demetric King's claim for punitive damages against Appellee Raymond Drennon, pursuant to 42 U.S.C. §1983, must fail as a result of its erroneous rulings on King's other race discrimination claims.

F.  Whether the District Court erred in finding that Appellant Demetric King failed to present a *prima facie* case of retaliation, pursuant to Title VII and 42 U.S.C. §1981.

G.  Whether the District Court erred in finding that Appellant Demetric King's conduct on May 30, 2019 constitutes an "intervening act" that bars Mr. King's retaliation claims, pursuant to Title VII, 42 U.S.C. §1981, and the FMLA.

H.  Whether the District Court erred in finding that Appellant Demetric King failed to show the existence of a genuine dispute of material fact concerning pretext in granting summary judgment to Appellees on King's retaliation claims, pursuant to Title VII, 42 U.S.C. §1981, and the FMLA.

2

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

I.  Whether the District Court erroneously construed inferences in favor of the parties moving for summary judgment in determining that Appellant Demetric King's race discrimination, retaliation, and punitive damages claims fail.

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

## STATEMENT OF THE CASE

## I.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

Demetric King ("King" or "Appellant") filed this case in the United States

District Court for the Middle District of Georgia on May 5, 2020, alleging claims of:

race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. §1981, and his Equal Protection rights under the Fourteenth

Amendment to the U.S. Constitution, brought under 42 U.S.C. §1983; retaliation in

violation of Title VII and 42 U.S.C. §1981; age discrimination in violation of the

Age Discrimination in Employment Act, 29 U.S.C. §§12201 *et seq*.; interference in

violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2615(a)(1);

retaliation in violation of the FMLA, 29 U.S.C. §2615(a)(2); and seeking punitive

damages, pursuant to 42 U.S.C. §1983. [Doc. 1.] On June 1, 2020, former-

Defendants Autron Hayes ("Hayes") and Anson Evans ("Evans") filed motions to

dismiss. [Docs. 14 and 15.] Those motions were granted, leaving Appellees the City

of Sylvester, Georgia ("City") and Raymond Drennon ("Drennon") as the only

remaining Defendants. [Doc. 32.] On July 6, 2021, Appellees moved for summary

judgment. [Doc. 41.] King responded to that motion, and Appellees filed a reply.

[Docs. 50 and 65.] On March 31, 2022, the District Court granted summary

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

judgment to Appellees on all claims and entered judgment in their favor. [Docs. 68

& 69.] King timely filed a Notice of Appeal.[1] [Doc. 71.]

---

[1] King appeals only the portions of the District Court's Order and Judgment granting summary judgment to Appellees on: (1) his race discrimination claims, under Title VII, 42 U.S.C. §1981, and the Equal Protection clause of the Fourteenth Amendment, pursuant to 42 U.S.C. §1983; (2) his retaliation claims, pursuant to Title VII, 42 U.S.C. §1981, and the FMLA; and (3) his claim for punitive damages, pursuant to 42 U.S.C. §1983.

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

## II.   <u>STATEMENT OF FACTS</u>

### A.  King's employment with the City Police Department

King began working for the City of Sylvester Police Department ("SPD") on May 1, 1997. [Doc. 43[2] at 17:4 – 22:8.] He was eventually promoted to lieutenant. *Id*. Approximately one year after that promotion, the City hired Evans as police chief. [Doc. 43 at 20:1-18; Doc. 50-28, ¶6.] Evans restructured SPD, changing King's title to "senior sergeant." [Doc. 43 at 20:1 – 21:13; Doc. 50-28, ¶7.] This was an organizational change, not a demotion. *Id*.

Evans demoted King to the rank of master patrol officer for complaining that he was sowing division in SPD. [Doc. 43 at 71:15-72:10; Doc. 50-28, ¶8.] King appealed, and the demotion was overturned. [Doc. 43 at 99:9-13; Doc. 50-28, ¶8.] Evans also disciplined King for allegedly failing to discipline a subordinate, though King did not witness and was not informed of the subordinate's misconduct. [Doc. 43 at 40:10-43:3; Doc. 50-28, ¶9; Doc. 50-3.]

---

[2] Deposition transcript citations in the brief correspond to the deposition page number, not the ECF page number.

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

Upon Evans' departure, Kenneth Washington ("Washington") became the interim chief. [Deposition of Kenneth Washington ("Washington Dep.")[3] at 53:5-18.] Washington promoted King to captain. [Doc. 43 at 17:4 – 22:8; Doc. 50-28, ¶11.] As captain, King was responsible for supervising SPD's patrol division. [Doc. 50-28, ¶12.] Approximately one month after King was promoted to captain, Washington demoted King to lieutenant, despite not believing King did anything wrong, because of political pressure from the City Manager, Hayes ("Hayes"). [Washington Dep. 9:18 – 16:15, 35:16 – 36:22; Exhibit B.] While King's title changed, his pay and duties were unchanged. [*Id.*] When King appealed, the demotion was overturned, and his rank was restored. [Doc. 43 at 122:14 – 123:18; Doc. 50-28, ¶14.]

**B. The City hires Drennon**

Washington is a Black male. [Doc. 50-28, ¶10.] While Washington was interim chief, Hayes claimed officers were "not paying attention" to him and were "running over him." [Washington Dep. at 41:4-14.] In an effort to correct the perceived problem, Hayes told Washington "I'm going to get you a white guy to

---

[3] Despite all Parties referring to the Washington deposition in summary judgment briefing, the deposition transcript was never filed in the District Court. Contemporaneously herewith, the Parties move to supplement the record and file the transcript.

7

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

come over there. … I'm going to get you a white guy." [*Id*. at 47:6-14] In August

2018, Hayes told Washington the City was hiring Drennon, a white male, as the new

interim chief. [*Id*. at 42:8 – 43:25.]

Drennon's hiring did not conform to the City's usual practice. The City

typically posted a job opening and sought input from the Georgia Chiefs'

Association before hiring a new police chief. [*Id*. at 52:10-17.] When Drennon was

hired, the opening was not posted, and the Georgia Chiefs' Association had no input.

*Id*. Drennon had never been a police chief, had not attended Chief Academy, and

was not certified as a chief. [*Id*. at 52:6-10; Doc. 54 at 54:13 – 55:19.] Two of SPD's

Black executive officers, Washington and King, had completed chief training and

were certified to be chiefs but were not notified of the job opening. [Washington

Dep. at 52:6-10 and at 7:13-14; Doc. 50-28, ¶15.] Two days after Drennon's hiring,

Washington was transferred to the City's public works department. [Washington

Dep. at ¶7:6-9.] Hayes had his "white guy" as Chief.

### C.  The City's and Drennon's actions leading up to King's demotion

When Drennon was hired, King remained a captain. [Doc. 50-28, ¶15.]

Washington's departure left King as the only person of color in SPD's executive

command staff (*i.e.*, with a rank of lieutenant or higher) and one of only four

minority SPD supervisors. [Doc. 50-28, ¶17.] At the time, two persons of Latino

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

descent, Anna Torres ("Torres") and Jonathan Luna ("Luna"), were sergeants, and

one Black person, Leon Billington ("Billington"), was a sergeant. [Doc. 50-28, ¶17.]

Almost immediately, Drennon embarked on a reorganization of SPD. [Doc.

50-28, ¶18.] King was left in charge of the patrol division, previously his primary

duty, but was also made responsible for duties previously handled by others,

including: managing SPD's hiring process; managing Municipal Court security;

supervising school resource officers; tending to all citizen complaints; and managing

additional duties as directed. [Doc. 50-28, ¶19.] This change placed more work on

King's plate than could reasonably be completed by one person, setting him up for

failure. *Id.* Drennon knew King had no prior experience or training in the hiring

process, yet King was not provided training or other resources to assist him. [Doc.

54 at 58:19 – 59:5, 60:8-11.] None of the white supervisors, including Sgt. Nicole

White[4] ("White") and Lt. Doug Brooks ("Brooks"), were given such onerous

workloads; instead, their workloads were reduced when their duties were given to

King. [Doc. 50-28, ¶19.] White previously managed the hiring process; Brooks

previously oversaw Municipal Court security. [Doc. 43 at 32:2-22.] Drennon

---

[4] Sgt. White's last name had changed to Wilson by the time of her deposition. Throughout this brief, she is referred to as "White," as that was her name at all relevant times.

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

stripped Torres of her supervisory rank altogether. [Doc. 50-28, ¶18; Doc. 54 at 109:5-25.] About a month later, Drennon fired Billington, leaving King as the only Black officer in SPD's management ranks. [Doc. 50-28, ¶18.] At this point, he had eliminated 50% of the people of color from supervisory ranks previously held.

Predictably, from time to time, small tasks were delayed, as King's competing duties interfered with one another. [Doc. 50-28, ¶23.] Drennon occasionally sent emails or had discussions with King and others concerning perceived issues. *Id*. For instance, Drennon occasionally emailed King, Brooks, and others about incident reports that had not been quickly completed. *Id*. However, Drennon did not issue any formal discipline to King between August 2018 and King's demotion in March 2019 asserting that King failed to perform his duties. *Id*.

While he managed the hiring process, King completed background investigations and/or interviews of at least six applicants, two of whom were hired. [Doc. 43 at 56:9 – 57:3; Doc. 50-28, ¶22.] His ability to move candidates through the process was hampered by a lack of qualified applicants and applicants who dropped out of the hiring process. [Doc. 50-28, ¶21.]  In December 2018, Drennon re-assigned the hiring process to White. [Doc. 43 at 32:12- - 33:20.]

Despite SPD's hiring efforts, officers repeatedly left the department, and by early 2019, SPD was short-staffed. [Doc. 50-28, ¶24.] In February 2019, King and

10

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

Brooks were required to regularly be on patrol, in addition to their other duties, to supplement the patrol division. *Id*. During this time, Brooks often shirked his duties, spending hours parked at the City's repair shop socializing. [Doc. 50-28, ¶25.] During one incident, in February or March 2019, Brooks was supposed to be on patrol while King worked in the office. *Id*. Brooks was charged with supervising the patrol. *Id*. A call came in, requiring officers to respond to an assault. *Id*. Brooks repeatedly failed to respond to the call, and King had to drop everything and respond to the scene. *Id*. Upon arriving, King discovered that the victim was the mother of Brooks' friend who worked at the City repair shop. *Id*. After handling the incident, King went to the repair shop to notify the friend and, upon arriving, discovered that Brooks was there socializing instead of working. *Id*. Later that day, King notified Drennon that Brooks was shirking his duties and failing to respond to calls. *Id*. Drennon told King that he knew Brooks was spending too much time at the repair shop and that he had received several citizen complaints about the issue. *Id*. King and Brooks were both supervised by Drennon, and King and Brooks were both subject to the same departmental rules. [Doc. 50-28, ¶26.] However, Drennon did not institute any internal investigation into Brooks or discipline Brooks. *Id*.

On March 22, 2019, Drennon notified King that he was being demoted from captain to sergeant, effective March 25, 2019. [Doc. 54 at 113:18-24, 116:17 –

11

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

117:14; Doc. 50-5.] King appealed the demotion to the City Manager, then Jack

Colby. [Doc. 50-28, ¶27; Doc. 50-6.] On March 25, 2019, Drennon provided King

with a letter, purportedly explaining the rationale behind the demotion. [Doc. 50-28,

¶28; Doc. 50-8.] In the letter, Drennon stated that the demotion was due to: (1) King

allegedly failing to ensure reports were timely approved; (2) King allegedly failing

to provide Drennon reports about how frequently officers patrolled the Shipp Center;

(3) King allegedly failing to complete any background investigations when he was

responsible for the hiring process; (4) King allegedly failing to ensure that officers

were patrolling Pinson Street; and (5) Drennon allegedly reviewing King's personnel

file and finding "paperwork from 2016 where you were counseled by … Washington

that you were not doing your job as a Patrol Supervisor by not 'checking reports' or

'keeping up with what officers are doing" and that in 2018 "Washington demoted

you from Captain to Lieutenant because you 'lacked the skills to be an executive

officer.'" [Doc. 50-8.]

The demotion was eventually upheld on appeal. [Doc. 50-28, ¶27; Doc. 50-7;

Doc. 54 at 119:24 – 120:21.] While the appeal was pending, King was treated as a

sergeant. [Doc. 43 at 89:4 – 90:8; Doc. 50-28, ¶27.] As a result of the demotion,

King's salary was reduced, his duties changed, and his supervisory authority was

curtailed. [Doc. 43 at 88:3 – 89:2; Doc. 50-28, ¶27.]

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

Drennon's assertion that King failed to ensure reports were timely completed was inaccurate. King repeatedly directed his subordinates to timely complete and review incident reports. [Doc. 50-28, ¶29.] At the time, responsibility for reviewing incident reports was split between King and Brooks. [*Id*.] King's practice was to review incident reports first thing each morning and throughout the day, as possible. [*Id*.] However, his other duties frequently interfered with this, forcing him to rely on Brooks to also review incident reports. [*Id*.] King repeatedly counseled Brooks that he needed to assist more with this process, but Brooks failed to do so. [*Id*.] When King notified Drennon of this fact, Drennon did not discipline Brooks. [*Id*.]

Drennon's assertions concerning the Shipp Center were false. On multiple occasions, King provided Drennon reports documenting which officers had stopped and checked the Shipp Center. [Doc. 50-28, ¶30.] In addition, King repeatedly discussed the Shipp Center with his subordinates, directed them to check the Shipp Center multiple times a night, and directed them to notify 911 when they did so. [*Id*.] King also followed up with his subordinates, to ensure the Shipp Center was being appropriately checked, and he repeatedly discussed this with Drennon. [*Id*.] Additionally, King checked the Shipp Center before and after his shift each day. [*Id*.] Further, King performed two overnight stakeouts at the Shipp Center, and he had a subordinate officer complete a stakeout on another occasion. [*Id*.] King kept

13

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

Drennon abreast of these actions and how frequently officers were checking the Shipp Center. [*Id*.]

With respect to the hiring process, Drennon's statement was baseless. King completed background investigations and/or interviews of at least six applicants. [Doc. 50-28, ¶22.]

Drennon's comments concerning King's personnel file were inaccurate and disingenuous. Drennon stated that he "found paperwork from 2016 where you were counseled by … Washington that you were not doing your job as a Patrol Supervisor by not 'checking reports' or 'keeping up with what officers are doing.'" [Doc. 50-8.] This was a reference to an email from Washington to King. Nowhere in the email did Washington tell King that he was not "keeping up with what officers are doing." [Doc. 50-9.] Moreover, Washington testified that the email was intended as coaching, shortly after King became a lieutenant, and was not intended to be viewed as any form of reprimand. [Washington Dep. at 8:10 – 9:15, 32:1 – 33:16.]

Drennon stated that in "May of 2018 Chief Washington demoted you from Captain to Lieutenant because you 'lacked the skills to be an executive officer.'" [Doc. 50-8.] While Washington did complete a document using similar language, the statement in Drennon's letter is not an accurate quote. [*See* Doc. 50-8 at 3; *compare* Doc. 50-4 at 6.] Moreover, the demotion was overturned on appeal, and

14

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

King ultimately incurred no discipline because of the incident at issue. [Doc. 43 at 99:9-13, 122:12 – 133:18.] Further, Washington testified that he never believed King had committed a disciplinary infraction and that he only issued the demotion because of political pressure from Hayes [Washington Dep. at 34:2 – 36:14 and at 9:18 – 20:4.] Contrary to the suggestion in his letter, Drennon did not discover this incident upon some then-recent review of King's personnel file. Rather, shortly after Drennon was hired, King discussed the incident and disciplinary action with him in detail, explaining precisely what occurred. [Doc. 50-28, ¶16.]

With respect to officers patrolling Pinson Street, Drennon's contention was, again, false. On February 19, 2019, Drennon sent out an email instructing officers to park on Pinson Street when they were typing reports or had spare time. [Doc. 50-10.] In the letter to King, Drennon claimed he had checked SPD's GPS system and learned that between February 21 and March 21, 2019, only two officers had stopped on Pinson Street. [Doc. 50-8.] A list of officers who allegedly stopped in that area was added to King's disciplinary records; that list reflects that only Lt. Brooks and Ofc. Celinski stopped or slowly drove through the area. [Doc. 50-11.] The list is inaccurate, as it does not account for the fact that King stopped in the area daily but did not have a GPS device on his vehicle, and Drennon was aware of that inaccuracy when he demoted King. [Doc. 43 at 148:18 – 151:15; Doc. 50-28, ¶31.] Additionally,

15

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

during that time, King repeatedly reminded his subordinate officers to step up patrols on Pinson Steet and park there as time permitted. [Doc. 50-28, ¶31.] Further, the GPS software used by SPD only records officers' locations every two minutes, meaning it is possible officers who lacked time to stop did increase patrols in the area but were not detected by the GPS system. [Doc. 50-12.]

Upon King's demotion to sergeant, no persons of color remained in SPD's executive command staff, and his duties as captain were given to Brooks. [Doc. 50-28, ¶27.] After King was later terminated, Brooks formally became captain. [*Id.*; Doc. 54 at 171:8-14, 92:17-21.]

### D.  King files an EEOC Charge and takes FMLA leave

On March 27, 2019, two days after being demoted, King filed a Charge of Discrimination with the EEOC asserting that the demotion was a result of race discrimination. [Doc. 50-28, ¶32; Doc. 50-13.] King was on approved FMLA leave from April 10, 2019 through May 24, 2019. [Doc. 50-28, ¶32.] Drennon was notified of the EEOC Charge soon after it was filed. [Doc. 54 at 68:17 – 69:2, 75:1 – 77:5, 120:13 – 126:3; Doc. 50-15.]

While King was on FMLA leave, Drennon began placing additional documents in his personnel file, documenting additional alleged performance deficiencies. On April 24, 2019, at Drennon's behest, Sgt. White issued a

16

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

memorandum detailing alleged deficiencies in King's handling of the hiring process months before. [Doc. 50-14.] Drennon issued a letter to the City Manager, Jack Colby, detailing a plethora of alleged deficiencies and misconduct.[5] [Doc. 50-15, pp. 2-6.] On May 28, 2019, Drennon added another letter to King's personnel file. [Doc. 54 at 120:13-124:16, 125:10 – 126:3; Doc. 50-15, pp.7-9.] The email in which he sent the letter to the City's human resources office was titled "Additional Documentation on EEOC complaint by Demetric King," and at his deposition, Drennon admitted he was creating this documentation in reaction to King's EEOC complaint. [Doc. 50-15, p. 7; Doc. 54 at 124:13-16.]

    While King was on FMLA leave, Drennon repeatedly contacted him about work issues. [Doc. 43 at 34:10-20, 102:7 – 104:6; Doc. 50-28, ¶33.] Additionally, while King was on FMLA leave, SPD personnel came to King's house and retrieved his patrol vehicle. [Doc. 43 at 34:10-20, 102:7 – 104:6; Doc. 50-28, ¶33.] On another occasion, Lt. Brooks went to King's house, demanded to know when he was returning to work, and stated that Drennon wanted to know. *Id*.

---

[5] While the first page of that letter states that it was issued on March 25, 2019, it could not have been generated or delivered at that time, as the body of the letter includes information concerning Drennon's alleged actions as late as April 24, 2019. *Id*.

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

King believes a GPS device was installed on his vehicle when the officers retrieved it from his home. [Doc. 50-28, ¶33.] When SPD obtained the GPS system, in 2018, King was not required to have the device installed on his vehicle, and he did not take his vehicle to have a GPS device installed before taking FMLA leave. [Doc. 43 at 148:13 – 151:15; Doc. 50-28, ¶34.]

### E.  A citizen makes a Facebook post, and King is fired

Approximately four days after returning from FMLA leave, on the evening of May 29-30, 2019, King was assigned to work an overnight shift. [Doc. 43 at 89:17-21, 104:11-14; Doc. 50-28, ¶35.] Only one other officer was assigned to work this shift with him. [Doc. 50-28, ¶35.] That evening, King patrolled the City from approximately 6:45 p.m. until approximately 2:20 a.m., making occasional stops to look for people who were violating traffic laws, check buildings for signs of criminal activity, or show a police presence in certain areas. [Doc. 50-28, ¶36; Doc. 50-12.] King did not receive a call for police assistance after 11:00 p.m., and by 2:20 a.m., the town was asleep and nothing of police interest was occurring. [Doc. 50-28, ¶¶36-37.] As a result, King parked near a City-owned property, in a residential area, at the intersection of Brown Street and Sutton Street. [Doc. 50-28, ¶37.] SPD officers often parked in this area, and that was well known within the department. *Id.* King parked in this area from approximately 2:24 a.m. until approximately 5:00 a.m. [Doc. 50-

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

28, ¶37; Doc. 50-12.] While parked, King was alone at all times and was, at all times, available for calls and monitoring his police radio. [Doc. 50-28, ¶37.] To pass the time, he listened to gospel music on the radio and read the Bible using an application on his cell phone. *Id*. The area was dark, and the windows of his vehicle were heavily tinted, such that any light from his cell phone would be difficult, if not impossible, to detect from outside. *Id*. At no point was the music turned up to a volume that would have been audible outside the vehicle. *Id*.

During the night, Scotty Thornton made a post on Facebook that read as follows:

> Excuse the language , [sic] But [sic] will somebody please inform the sybester [sic] police officer behind my house blaring music and getting his dick sucked by two 911 dispatchers that this is against protocol and just downright shows how shitty of a place we live in. Our lives are in your hands. Go to fucking work.

[Doc. 50-17.] On May 30, 2019, Drennon was notified of the Facebook post by an attorney with the District Attorney's Office. [Doc. 50-18; Doc. 54 at 39:8 – 40:15.] Although the Facebook post was not a formal complaint, Drennon notified Sgt. White about the post and directed her to investigate. [Doc. 50-18; Doc. 54 at 134:23 – 136:3.]

On May 31, White commenced her "investigation," which consisted, primarily, of interviewing King and the three adults who were present overnight at

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

the home from which the Facebook post was made: Thornton; Jake Waltman

("Jake"); and Amanda Waltman ("Amanda"), each of whom were white. [Doc. 50-

18.] Thornton, Jake, and Amanda did not submit any complaint to SPD or come

forward voluntarily. [Doc. 54 at 136:7 – 137:2.] Before conducting any interviews,

White obtained second-hand information indicating that the police vehicle involved

was an SUV and that King was the only officer driving an SUV on the shift. [Doc.

50-18.]

On May 31, 2019, White interviewed Thornton. During the interview, he

retracted portions of the statement in his post. [Doc. 50-18 and Exhibit Q (video of

Thornton interview manually filed with District Court, *see* Doc. 51).] He admitted

he was "half asleep" when he made the post. [Exhibit Q.] Thornton said they

observed the vehicle behind Amanda's house, where they had spent the night,

sometime between 3:00 and 3:30 a.m. [*Id*.] He claimed, "we heard loud music" and

"we went out there to say something to them." [*Id*.] He claimed that after arriving

outside, they saw that it was a police officer, but they "peeked over, and there was,

there were two women." [*Id*.] He said you could "kind of tell what was going on"

but that "we didn't want to stick our nose too far into" it. [*Id*.] When asked if he

could tell whether the officer in the vehicle was white or Black, he couldn't respond

and said "it was so dark …." [*Id*.] White then cut him off and asked about the

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

officer's physical build; Thornton claimed the officer in the vehicle had a "medium

build." [*Id.*] At the time, King was approximately five feet and six inches tall and

weighed more than 400 pounds; he was not of "medium build." [Doc. 50-28, ¶39,

Doc. 59 at 144:1-7.] When later asked if the women in the vehicle were white or

Black; Thornton said he didn't see their race because it was so dark but that there

were two women. [Exhibit Q.] He claimed Jake had a video of the vehicle and "had

to climb a tree to get the video." [*Id.*]

Next, White interviewed Amanda. [Doc. 50-18 and Exhibit R (video of

Amanda interview manually filed with District Court, *see* Doc. 51).] Amanda said

she was inside the house, while Thornton and Jake were hanging out outside.

[Exhibit R.] She said that, around 3:00 a.m., Thornton and Jake came inside and told

her about the vehicle outside. [*Id.*] She said she then walked out on the back porch,

where she could see the vehicle, but she could not see anyone inside the car because

it was so dark. [*Id.*] She said the vehicle was parked with its headlights facing her

yard, and she could not see inside. [*Id.*]

White later received a call from Jake, who is a convicted drug dealer. [Doc.

50-18, Doc. 50-21, and Exhibit T (video of Jake interview manually filed with

District Court, *see* Doc. 51).] At the time, White knew he had been previously

arrested and had participated in one of his arrests. [Doc. 59 at 150:13 – 151:23,

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

228:3-11.] Jake claimed that King was parked playing loud music with girls laughing and talking in the car. [Exhibit T.] Jake was not even sure that what he heard was a woman and suggested he may have heard a male officer. [*Id.*] He said he could not see "who was in the car" because the windows on the vehicle were so dark and it was "pitch black dark" outside. [*Id.*] He said that he stood on a "kid's stool," rather than climbing a tree, to get video of the vehicle. [*Id.*] Jake claimed he was in his room, heard loud music, didn't know what it was, and he asked Scotty, who was already "out there smoking a cigarette" and Amanda if they were "having a party" in the back yard. [*Id.*] He admitted that he didn't know "what color nobody was" or "who all was in the vehicle." [*Id.*] Jake later said that they had been up late that night "hanging out" because it was his birthday, claiming that when he heard the noise, he thought someone was partying without him on his birthday. [*Id.*]

A few days later, on June 3, White interviewed Thornton again by phone. [Doc. 50-18; Doc. 59 at 245:8 – 247:6.] During this call, Thornton contradicted his earlier statement and admitted that he did not actually see any women in the vehicle. [*Id.*] This time, he said he heard music, heard women talking, and saw shadows in the vehicle. [*Id.*]

Later, on June 3, White interviewed King. [Doc. 50-18; Doc. 50-28, ¶38; Exhibit U (audio of King interview manually filed with District Court, *see* Doc. 51).]

22

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

She opened the interview by informing King that SPD received a complaint about a vehicle "parked in the area of Sutton Street and Brown Drive with music blaring, females inside the vehicle and possible sexual activity involved." [Exhibit U.] She said the claim was posted on Facebook and that the guy who made the post "put that the officer was getting a blow job in front of his house." [*Id*.] She gave King no other context, such as time, date, or description of the vehicle. [*Id*.] Not surprisingly, confronted with only this vague information and knowing that he had not had women in his vehicle or engaged in a sex act, King responded "what's that got to do with me." [Doc. 50-28, ¶38 and Exhibit U.] Only after this exchange did White inform King of any of the context of the complaint. [*Id*.] Once he understood the context of the allegations against him, King did not try to hide anything. [*Id*.] He freely admitted that he parked in that area around "two something" a few nights before and had read the Bible and listened to gospel music while he was parked there. [*Id*.] But he unequivocally denied that the music was "blaring" and that anyone was there with him. [*Id*.] During her deposition, White admitted that she lied to King about the other witnesses' statements during this interview and also that lying to a witness during an internal investigation was improper. [Doc. 59 at 41:3 – 42:22, 183:19 – 184:21, 199:17 – 201:3.]

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

Prior to conducting the investigation of King, an SPD internal investigation concluded that Sgt. White, who is white, used racist language in the workplace when she said "if they call me in the office one more time, I'm going to tell them to suck a Nigga dick!" [Doc. 50-24.] Additionally, during her deposition, White admitted that she previously openly used the word "nigga" to describe Black people. [Doc. 59 at 230:3-22.] Despite: (1) Thornton's and Jake's repeatedly shifting stories; (2) the inconsistencies between the statements of Thornton, Jake, and Amanda; (3) Jake's known criminal history; (4) Jake's admission that they had been up late partying for his birthday on the night of the incident; and (5) the text of Thornton's Facebook post, which suggested he was inebriated while writing it, White decided to credit the stories of these incredible white witnesses over the statement of King, a Black sworn officer. [Doc. 59 at 207:9-18, 229:3 – 230:2.] Additionally, White failed to consider motives that Thornton and Jake may have had to complain about a police officer. [Doc. 59 at 165:6 – 188:16.] She issued an investigation report that did not accurately recount the statements she took from the witnesses, and during her deposition, she repeatedly admitted that the report contained misstatements of fact. [Doc. 50-18; Doc. 59 at 253:1 – 262:20.] While the witnesses provided photos of King's vehicle parked behind the house, the photos do not corroborate Thornton's or Jake's version of events, as they do not show any person or shadows inside the vehicle. [Doc. 50-

24

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

25; Doc. 59 at 126:20 – 127:17.] White's report indicated that the complaint made

against King was as follows:

> "On May 30, 2019 at approximately 1818 hours I, Sergeant Nicole
> White, was contacted by Chief Drennon and advised that JD Hart
> contacted him a few minutes prior in reference to a Facebook post
> someone made. The post accused a Sylvester Police Officer of being
> parked behind someone's house with music blaring, females in the
> Sylvester Police Vehicle, and possibly having sexual relations. Chief
> Drennon advised the post stated there were dispatchers involved and
> someone was getting a 'blow job.' Chief Drennon advised me that he
> had information that the 911 Director, Marci Errair, was already aware
> of the complaint. Chief Drennon advised me to initiate an Internal
> Investigation and to contact JD Hart for a copy of the post and further
> information."

[Doc. 50-18 at p. 2.] Remarkably, despite King's statement and the incredible yarn

spun by the three white witnesses, White's report concluded that "[t]he complaint

against … King is SUSTAINED, the allegation is supported by sufficient evidence.

Appropriate disciplinary action is warranted." [*Id*. at p. 9.]

White provided her report to Drennon on June 6, 2019. *Id*. Drennon reviewed

the investigation and, likewise, took the word of the white witnesses, despite their

obvious credibility problems, over the word of King. [Doc. 54 at 138:14-17; 145:18

– 152:25, 165:17-167:22.] The same day he received White's report, Drennon

terminated King's employment, effective immediately. [Doc. 54 at 154:22 – 156:12;

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

Doc. 50-26.] When he terminated King, Drennon knew King had an EEOC Charge

alleging that his recent demotion was discriminatory. [Doc. 54 at 167:23 –168:4.]

### F. Drennon made racist comments in the workplace.

Prior to demoting and terminating King, Drennon made racist comments in

the workplace on at least two occasions. In December 2018, White informed

Drennon that Torres would not be able to work a parade because she had to attend

immigration court, for a hearing involving her brother. Drennon responded, "so

we've got to work short because she's got to go talk – check on an illegal?" [Doc.

54 at 85:12 – 88:25.] In his deposition, Drennon admitted that in making this

statement he assumed that, because Torres' brother was Hispanic, he lacked legal

status and that this assumption was based on her brother's ethnic origin. *Id*. On

another occasion, in February 2019, Drennon used the word "nigger" in front of

multiple Black City employees who were Drennon's subordinates. [Doc. 58 at 8:9-

14, 8:22 – 12:14; Doc. 57 at 9:22 – 10:6, 11:4 – 14:19.]

### III.    STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of summary judgment.

*Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001). It must

"view all of the facts in the record in the light most favorable to [the party who is

not moving for summary judgment] and draw all inferences in [his] favor." *Id.*

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

## IV.   SUMMARY OF ARGUMENT

A.   The District Court failed to construe all reasonable inferences and facts in the light most favorable to King, as the nonmoving party at summary judgment, and further failed to consider evidence that would have balanced in King's favor on his discrimination and retaliation claims.

B.   In conducting its analysis of King's race discrimination claims concerning his termination, under *McDonnell Douglas*, the District Court erroneously found that a white lieutenant was not an adequate comparator and that King failed to show that the Appellees' claimed reasons for termination were pretextual.

C.   In conducting its analysis of King's race discrimination claims concerning his demotion and termination under the "convincing mosaic" and mixed-motive theories, the District Court made multiple errors of fact and misapplied the law.

D.   The District Court misapplied the law with respect to King's retaliation claims, pursuant to Title VII and 42 U.S.C. §1981, and thereby erred in finding that King failed to establish a *prima facie* case of retaliation.

E.   The District Court erred in finding, with respect to all of King's retaliation claims, that an alleged incident cited by Appellees as

27

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

>justification for his termination broke any causal link between his
>
>protected conduct and the adverse employment action and further that
>
>King failed to show that the cited reason for the termination was
>
>pretextual.

**F.**  Based upon its errant grant of summary judgment to Appellees on
King's race discrimination claims, the District Court erred by granting
summary judgment to Appellee Drennon on King's punitive damages
claim, pursuant to 42 U.S.C. §1983.

## V.  **ARGUMENT AND CITATION OF AUTHORITIES**

### A.  **Legal standard to establish a claim for race discrimination under Title VII and 42 U.S.C. §§1981, 1983**

Claims for race discrimination and retaliation under Title VII, 42 U.S.C.
§1981, and 42 U.S.C. §1983 are analyzed under the same case law and framework.
*Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000);
*James v. City of Montgomery*, 823 Fed. Appx. 728, 732 (11th Cir. 2020). Plaintiffs
can avoid summary judgment in several ways, including: (1) under the *McDonnell
Douglas* framework; (2) by pointing to "a convincing mosaic of circumstantial
evidence that creates a triable issue about the employer's discriminatory intent;" or
(3) in a mixed-motive case, showing that the employer made an adverse employment

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

decision and that a protected characteristic was a motivating factor in that decision. *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019) ("*Lewis I*"); *Shannon v. National Railroad Passenger Corp.*, 774 Fed. Appx. 529, 540-41 (11th Cir. 2019); *James*, 823 Fed. Appx. at 733; *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016).

### 1.    McDonnell Douglas

Under the *McDonnell Douglas* standard, a plaintiff must establish "a *prima facie* case of discrimination by showing (1) that []he belongs to a protected class, (2) that []he was subjected to an adverse employment action, (3) that []he was qualified to perform the job in question, and (4) that [his] employer treated 'similarly situated' employees outside [his] class more favorably." *Lewis I*, 918 F.3d at 1221. If the plaintiff makes a *prima facie* case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id*. If defendant carries that burden, "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination …." *Id*. (internal citations, quotation marks, and alterations omitted). A plaintiff may satisfy this burden "by offering evidence that [the employer] more likely than not acted with a discriminatory motive, or by showing that its proffered reasons are not credible …." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

To show pretext, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (internal citation and quotation marks omitted).

### 2.    The "convincing mosaic" and mixed-motive standards.

"'Establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sin qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case. Accordingly, the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("*Lewis II*") (*quoting Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "Even without similarly situated comparators, 'the plaintiff will always survive summary judgment if he … presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'" *Id.* A plaintiff may establish a "convincing mosaic" "'by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements …, and other bits and pieces from which an inference of discriminatory intent might be drawn,'" (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis II*, 934 F.3d at 1185 (*quoting Silverman v. Bd. Of Educ. Of City*

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

*of Chi.*, 637 F.3d 729, 733-34 (7th Cir. 2011) (behavior indicative of discriminatory animus may include "behavior toward or comments directed at other employees in the protected group")).

The Eleventh Circuit has differentiated single-motive discrimination claims from mixed-motive claims. *Shannon*, 774 Fed. Appx. at 540-51. "An employee can succeed on a mixed-motive claim by showing that illegal bias, such as bias based on [race], was a motivating factor for an adverse employment action, even though other factors also motivated the action." *Id*. (*quoting Quigg*, 814 F.3d at 1235). "The *McDonnell Douglas* framework 'is inappropriate for evaluating mixed-motive claims,' and instead, the plaintiff need only show that the (1) employer made an adverse employment decision against [him], and (2) a protected characteristic was a motivating factor for that decision." *Id*. (*quoting Quigg*, 414 F.3d at 1237-39."

**B.**     **The District Court erred in concluding that King failed to show a genuine issue of material fact for trial on his race discrimination claims under *McDonnell Douglas*.**

In analyzing King's race discrimination claims under *McDonnell Douglas*, the District Court properly found that King met the first three requirements to establish a *prima facie* case, as he belongs to a protected class, was qualified to do his job, and was subjected to adverse employment actions. [Doc. 68 at 12.] However, the District Court erroneously found that a white lieutenant, Brooks, was not a proper

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

comparator and that, as a result, King failed to establish a *prima facie* case. In addition, the District Court erred in concluding that King failed to present evidence demonstrating a genuine issue of material fact regarding whether Appellees' proffered reasons for termination amounted to pretext. In reaching these conclusions, the District Court failed to construe all inferences of fact in favor of King and, instead, construed inferences in favor of Appellees, the moving parties.

### 1.     King identified a valid comparator.

In his response to Appellees' summary judgment motion, King conceded that he was unable to identify a valid comparator with respect to his demotion claims. Thus, he argued the demotion claims only under the "convincing mosaic" and mixed-motive theories. However, King did demonstrate the existence of an adequate comparator for purposes of his termination claims in Brooks.

As this Court has recognized, King's comparator need not be identical to him; "in the real world (and real workplaces) 'doppelgangers are like unicorns' – they don't exist." *Lewis I*, 918 F.3d at 1225. Instead, King must show only that he and his comparator were "similarly situated in all material respects." *Id.* at 1226. This standard does not require that the comparator be similar to the plaintiff "in all but the protected ways." *Id.* at 1227. "Nor is it necessary for a plaintiff to prove purely formal similarities - *e.g.*, that []he and h[is] comparators had precisely the same

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

title." *Id*. "Nor will minor differences in job function disqualify a would-be

comparator." *Id*. This Court has suggested that "[o]rdinarily, … a similarly situated

comparator –

- Will have engaged in the same basic conduct (or misconduct) as the plaintiff …;
- Will have been subject to the same employment policy, guideline, or rule as the plaintiff …;
- Will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff …; and
- Will share the plaintiff's employment or disciplinary history … ."

*Id*. (emphasis added).

    The District Court found that Brooks was not a valid comparator for several

reasons: (1) "Plaintiff and Lt. Brooks were not officers of the same rank[;]" (2) "the

two were not under the jurisdiction of the same supervisor, as Plaintiff was Lt.

Brook[s'] direct supervisor and Drennon was Plaintiff's direct supervisor[;]" (3)

"[w]hile Drennon was in the supervisory chain of command during the Brooks

incident, there is no evidence that Defendant Drennon played any role in the decision

not to discipline Lt. Brooks[;]" and (4) "while both officers are alleged to have

neglected their duties, the allegation against Plaintiff was more severe as Plaintiff

was alleged to have also disturbed the peace – prompting a citizen complaint." [Doc.

68 at 13.] The District Court also noted that King had several prior misconduct

allegations but found that Brooks had not been disciplined for any prior misconduct,

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

ignoring the facts that Drennon admitted there were numerous citizen complaints about Brooks shirking his duties yet failed to take disciplinary action and also failed to discipline Brooks for not timely reviewing reports. [*Id*. at 13-14; Doc. 50-28, ¶29.]

While Brooks and King had different titles at the time of their alleged misconduct (Brooks was a lieutenant; King was a sergeant), their titles are irrelevant to the comparator analysis in this case because they were charged with performing the same duties at the time of their alleged misconduct. That is, both were the highest-ranking officers on patrol at the time of their alleged misconduct and were charged with supervising the patrol and responding to calls. [Doc. 50-28, ¶¶24-25, 35-37.]

The District Court's findings that Brooks and King were not under the jurisdiction of the same supervisor and that there is no evidence Drennon played any role in the decision not to discipline Brooks are contrary to the record evidence. King submitted a declaration showing that he and Brooks were both supervised by Drennon and subject to the same departmental rules. [*Id*., ¶26.] In addition, the declaration makes clear that Drennon received complaints about Brooks' failure to perform his duties, from multiple citizens and King, yet failed to investigate Brooks or take disciplinary action against him. [*Id*., ¶¶25-26.] By contrast, when he received

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

only a Facebook post about King, Drennon immediately opened an investigation and

subsequently terminated King.

The District Court's conclusion that the allegations against King were more

severe than those against Brooks improperly construes inferences in favor of the

Appellees and is contrary to the evidence. King presented evidence showing that,

while he was parked on May 30, 2019: he was in a location where officers frequently

parked; the city was asleep; nothing of police interest was occurring; he was

available and monitoring his radio; he did not receive or miss any calls; and he was

not disturbing the peace. [*Id*., ¶¶35-37.] By contrast, Brooks was apparently not

monitoring his radio, as he missed several calls for assistance and failed to respond

to an ongoing assault. [*Id*., ¶25.] Given Brooks' failure to respond, his misconduct

was more severe than King's alleged misconduct. Further, the fact that a citizen

complained once about King does not distinguish his alleged conduct from Brooks'

conduct. Drennon received multiple citizen complaints about Brooks. [*Id*., ¶25.]

Because the distinction between the treatment of King and Brooks is not a

matter of the degree of discipline imposed but, rather, whether any investigation or

discipline occurred at all, Brooks' disciplinary history is irrelevant to the

determination of whether he constitutes a valid comparator. Brooks and King had

similar duties at the relevant times and were both supervised by Drennon. Drennon

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

received similar complaints about Brooks and King; he failed to investigate and imposed no discipline on Brooks, a white man, and sanctioned King, a Black man, by terminating him. On this record, a reasonable jury could find that Brooks is an adequate comparator, and a genuine dispute of material fact exists for trial.

## 2. King presented evidence demonstrating that Appellees' claimed reasons for termination were pretextual.

At summary judgment, Appellees asserted several reasons for demoting and terminating King. Appellees asserted that King was demoted for failing to supervise his subordinates and perform his duties as captain. [Doc. 41-2 at 2.] Specifically, Appellees contended that King failed to approve subordinates' reports, failed to patrol or have his officers patrol the Shipp Senior Center and Pinson Street, failed to provide requested reports, and failed to perform his hiring duties. [*Id*.] Appellees asserted that King was ultimately terminated due to his disciplinary history and because, less than one week after returning from FMLA leave, he "shirked his supervisory responsibilities by parking for over 2.5 hours in a remote location where no police presence was required and blaring music loud enough to disturb the neighbors, possibly with two females in the patrol car with him." [*Id*. at 12-13.]

King presented evidence, restated in the fact section above, rebutting every alleged justification for his demotion and termination. Nevertheless, the District

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

Court found that "Plaintiff has offered no evidence showing that [Appellees'] proffered reasons for his termination were pretextual." [Doc. 68 at 15.] This conclusion was erroneous and based on a misreading of the evidence, a failure to construe facts or inferences in King's favor, and a misstatement of King's arguments.

The District Court asserted that while King disputed "the credibility of the complainant and the exact details of the investigated incident – that any sexual activity took place in the patrol vehicle or that anyone else was with him – Plaintiff does not dispute that he was, in fact, parked in the described location for the length of time described or that he was playing music at the time." [Doc.68 at 15.] This assessment of King's arguments was erroneous. King did not merely dispute the credibility of the complainant, he asserted that Drennon's acceptance of the white witnesses' story over King's own version of what occurred was evidence of pretext and race discrimination, particularly given the fact that the white witnesses' statements were clearly inconsistent and incredible. Moreover, King did not concede anything about the incident, other than that he was parked in a residential area near a City-owned property, where SPD officers frequently parked, for approximately 2.5 hours, during which he continually monitored his police radio, listened to gospel

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

music at a volume that was not audible outside the vehicle, and read the Bible on his cell phone.

The District Court found that "Drennon did not terminate Plaintiff because he concluded Plaintiff had women in the car with him." [Doc. 68 at 15-16.] Instead, the Court found that Drennon terminated King because he "had been 'sitting on Sutton Drive for two and one-half hours, playing music loud while doing nothing.' … and that '[a]fter considering this complaint, along with [Plaintiff's] history of discipline …[,]' he had decided to terminate Plaintiff's employment." [*Id*.] These findings are based on a failure to construe fact inferences in King's favor. In fact, the District Court's finding that Drennon "did not terminate Plaintiff because he concluded Plaintiff had women in the car" is flatly contradicted by the very letter to which the District Court cited as support for its finding. In that letter, Drennon stated, in relevant part, as follows:

> The Sylvester Police Department recently conducted Internal Affairs Investigation #19-05-0001IA into a complaint that involved you sitting on Sutton Drive for two and one-half hours, playing music loud while doing nothing. The complaint also indicated you were accompanied by two females who were performing a sex act on you while sitting there.

> The Internal Affairs investigation was **SUSTAINED.** The investigation showed there was no proof that a sexual act took place *but both complainant and witnesses indicate there were two females in the vehicle with you.*

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

[Doc. 43-1 at 12; Doc. 50-26 at 3(emphasis added).] Moreover, King presented evidence disputing the assertions that he was "sitting on Sutton Drive for two and one-half hours, playing music loud while doing nothing." Again, King submitted a declaration demonstrating that he was, at all times, performing his duties. [Doc. 50-28, ¶¶35-37.]

The District Court found that King "has not disputed that the various incidents of misconduct leading to discipline have occurred" but rather "disputes the seriousness of the offenses and the fairness of the discipline imposed" and "disputes that his disciplinary history was an adequate reason for his termination[.]" [Doc. 68 at 16.] This finding was, again, contrary to the evidence. King disputed several of the incidents of alleged misconduct in his disciplinary history. For instance, he disputed two disciplinary actions against him by Evans: a demotion for comments to a member of City Council, for which the discipline was reversed; and a reprimand for supposedly failing to discipline a subordinate for making disrespectful statements when, in fact, he did not witness the alleged statements and was not notified of them until he was reprimanded. [Doc. 50-28, ¶¶8-9.] He also disputed a demotion by Washington and presented deposition testimony showing that Washington instituted the demotion due only to political pressure and did not believe that King had done anything wrong. [Doc. 50-28, ¶¶13-14; Washington Dep. 9:18 – 16:15, 35:16 –

39

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

36:22 and Exhibit B.] King also presented evidence showing that Drennon was informed of the details surrounding these false and overturned disciplinary actions. [Doc. 50-28, ¶16.] Further, King disputed a reprimand he received from Drennon for allegedly harassing a subordinate. [Doc. 50-28, ¶18.] King also, obviously, disputed the facts surrounding the May 30, 2019 incident.

Moreover, King disputed the assertion that his disciplinary history was, in fact, a factor considered by Drennon in the termination decision. Nothing had changed with respect to King's disciplinary history between the time that he was demoted from captain to sergeant and the time that he was terminated, other than the fact that incredible white witnesses made false allegations that he was disturbing the peace, had women in his vehicle, and may have engaged in a sex act. To the extent that Appellees contend King's disciplinary history or alleged performance problems as captain in some way warranted his termination, this assertion is belied by their own actions. Rather than terminating King based on his disciplinary history and alleged performance problems, they merely demoted him.

Further, as is more fully discussed below, memoranda discussing King's prior disciplinary history and alleged performance problems as captain were placed in his personnel file by Drennon and White. Those memoranda were created shortly after King filed an EEOC Charge concerning his demotion, while he was on FMLA leave.

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

The email in which Drennon sent a memo to the City's human resources office was titled "Additional Documentation on EEOC complaint by Demetric King," and at his deposition, Drennon admitted he created this documentation in reaction to King's EEOC complaint. [Doc. 50-15, p. 7; Doc. 54 at 124:13-16.] These memoranda, which Drennon claimed he relied upon in making his decision, were not legitimate bases on which to terminate King's employment. Rather, they were obviously retaliatory under the FMLA, Title VII, and 42 U.S.C. §1981.

Based on the foregoing faulty analysis, the District Court concluded that "Plaintiff's arguments are insufficient to show that Defendants' proffered reasons for demoting or terminating Plaintiff were false and that race discrimination was the real reason." [Doc. 68 at 16.] This finding ignores the issues addressed above and the fact that, King's alleged performance problems did not result in his termination but only demotion, leaving only one justification for the termination: the investigation by a racist officer of allegations levied against King by a white drug dealer, his friend, and his sister, which were inconsistent and so incredible that they could not believed by a rational person.

Even though their statements were demonstrably incredible, Drennon and White, the investigator, both of whom used racist language in the workplace on multiple occasions, took the word of the white witnesses over the word of King, a

41

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

Black officer with twenty years of service. [Doc. 54 at 85:12 – 88:25, 143:15 –
152:25, 164:10 – 166:4; Doc. 57 at 9:22 – 10:6, 11:4 – 14:49; Doc. 58 at 8:9 – 12:14.]
In reaching his termination decision, Drennon purportedly concluded that women
were in the vehicle with King. (Doc. 50-26; Doc. 54 at 154:22 – 156:9.) Drennon's
supposed conclusion is not credible and constituted a pretextual reason to terminate
King's employment because of his race.

For the foregoing reasons, the District Court's conclusion that King offered
no evidence showing that Drennon's proffered reasons for his termination were
pretextual was erroneous. At the very least, King presented evidence demonstrating
the existence of a genuine dispute of material fact for trial on the issue of pretext.

**C.    The District Court erred in concluding that King failed to show a
genuine dispute of material fact on his race discrimination claims
under the "convincing mosaic" and mixed-motive theories.**

The District Court granted summary judgment to Appellees on King's
"convincing mosaic" and mixed-motive arguments for the same reasons. [Doc. 68
at 17-20.] In doing so, the District Court erred by misconstruing multiple facts,
improperly construing facts in favor of Appellees, completely failing to consider or
analyze other facts, and misapplying the law. King presented evidence showing the
existence of genuine disputes of material fact under both the "convincing mosaic"

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

and mixed-motive theories, concerning his claims based on both his demotion and

termination.

> **1.    The District Court misconstrued evidence surrounding Drennon's departmental reorganization.**

With respect to King's assertion that Drennon used a departmental

reorganization to strip minority officers from leadership positions and set him up for

failure to later justify his demotion, the District Court made multiple fact errors. The

District Court stated that King complained that Drennon "set him up for failure by

giving him numerous job responsibilities, but Plaintiff does not argue that he was

given more duties that similarly situated white employees." [Doc. 68-17.] This is

contrary to the evidence. King presented evidence showing that: his workload was

made heavier specifically by making the workloads of two white officers, Brooks

and White, lighter and heaping their former duties upon him; and no white

supervisors were given such onerous workloads. [Doc. 50-28, ¶19.]

Similarly, the District Court stated that "Plaintiff next argues that shortly after

Drennon became Chief of Police, he stripped Luna, a Latino police officer, of his

sergeant rank as part of the departmental reorganization …" but found that "[t]he

undisputed evidence in the record, however, shows that Officer Luna, like Plaintiff,

retained his supervisory role after the departmental reorganization, and that Luna has

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

since been promoted to the rank of lieutenant." [*Id*.] Contrary to the language in the District Court's order, King did not argue that Luna was stripped of his rank; rather, he asserted that a Latina officer, Torres, was stripped of her rank. [Doc. 50 at 3-4, 23-24; Doc. 50-28, ¶18.]

With regard to the departmental reorganization, King presented evidence that the City Manager sought to remove a Black chief, Washington, and install white leadership in SPD, through an irregular hiring process, because he believed subordinates would listen better to white leadership. [Washington Dep. at 7:13-14, 41:4-14, 47:6-14, 52:6-17; Doc. 50-28, ¶15.] Shortly after he arrived at SPD, Drennon began stripping persons of color from SPD's supervisory ranks and, shortly thereafter, used racist language in the workplace. When Washington transferred out of the department, King, Torres, Luna, and Billington were the only remaining supervisors of color. [Doc. 50-28, ¶¶17-18.] Drennon stripped Torres of her Sgt. rank via a departmental reorganization. [*Id*.] As part of that reorganization, he also placed so many duties on King's plate that he set King up for failure and did so by reducing the duties of two white officers and foisting those duties upon King. [*Id*., ¶19.] Among the tasks newly assigned to King was managing the department's hiring process. [*Id*.] Drennon knew King had no prior experience or training in the hiring process, yet King was not provided training or other resources to assist him.

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

[Doc. 54 at 58:19 – 59:5, 60:8-11.]   In October 2018, about a month after "reorganizing" Torres out of the supervisory ranks, Drennon terminated the employment of the only other Black supervisor, Billington. [*Id*., ¶¶18-19.] This left King as the only Black supervisor in the department and Luna as the only Latino supervisor in the department. [*Id*.] While there is evidence that, as of June 1, 2021, Luna had been promoted to lieutenant, by that time there had been a change in police chiefs, and there is nothing in the record indicating that Luna's promotion occurred under Drennon. [Doc. 59 at 19:1 – 20:17.]

Shortly thereafter, Drennon made racist remarks in the workplace, suggesting he held racial bias against non-whites. In December 2018, Drennon made racist assumptions concerning Torres' brother, calling him "an illegal." [Doc. 54 at 85:12 – 88:25.] Soon after that, in February 2019, Drennon used the word "nigger" in the presence of his African-American subordinates. [Doc. 57 at 9:22 – 10:6, 11:4 – 14:49; Doc. 58 at 8:9 – 12:14.]

>                2.    **The District Court failed to consider evidence showing that Appellants' claimed reasons for demoting King were pretextual and discounted evidence of Drennon's racial bias, White's racial bias, and Drennon's transfer of King's former duties to a white man.**

Only five weeks after he used the word "nigger" in the workplace, Drennon demoted King to sergeant and handed King's captain duties to a white man, Brooks.

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

[Doc. 50-28, ¶27; Doc. 57 at 11:4 – 14:19; Doc. 58 at 8:22 – 12:14.] In support of

his convincing mosaic and mixed-motive arguments, King presented evidence,

including deposition testimony, documents, and a declaration, controverting each of

the reasons cited by Appellees as justifying the demotion and showing that the cited

reasons were pretextual. [Doc. 50 at 3-9, 24-25.] The District Court erred in that it

entirely omitted this evidence from its analysis under the "convincing mosaic" and

mixed-motive standards. [Doc. 68 at 17-20.]

Additionally, in granting summary judgment to the Appellees, the District

Court improperly discounted evidence of Drennon's racial bias, based on his use of

racist language, Sgt. White's racial bias, and transfer of King's duties to a white man

and failed to construe this evidence in a light most favorable to King. With respect

to Drennon's racist remarks, the District Court stated that, while his "remarks may

be offensive and objectionable, Plaintiff does not explain how these two comments

support an inference of discriminatory intent with regard to Drennon's treatment of

Plaintiff." [Doc. 68 at 18.] The District Court further found that the "lack of such an

inference is bolstered by the circumstances of Drennon's use of the n-word" because

he used the word, a well-known and plainly offensive racial slur, to refer to a white

man and his remark was not "directed at Plaintiff or any other Black person." *Id*.

The District Court found that Drennon's "use of an offensive term, without more,

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

does not create an inference of discriminatory intent. Nor is it evidence that …
Drennon's justification for firing Plaintiff was pretext." *Id*.

With respect to Sgt. White's racial bias, based on her repeated use of the word
"nigga," both within and outside of the workplace, the District Court found that
White's use of "racial epithets" and potential "bias[] against Plaintiff – without
evidence that Drennon was aware of the comments – cannot be evidence of
Drennon's discriminatory intent." [*Id*. at 19.] As to the transfer of King's former
captain's duties to Brooks, the District Court simply stated that, "[w]ithout more,
this evidence amounts to mere speculation that Defendant Drennon demoted or
terminated Plaintiff because of his race." [*Id*. at 19.]

The District Court's finding that Drennon's racist statements in the workplace
were not evidence of discrimination constitutes both a misapplication of the law and
an improper failure to construe the facts in favor of King. A supervisor's use of a
racist term, standing alone, can be evidence of racial animus. *See Ash v. Tyson
Foods, Inc*., 546 U.S. 454, 456 (2006) (discussing use of the term "boy"). Indeed,
this Court has held that a supervisor's "racially-based comments can be
circumstantial evidence to support an 'inference of discrimination' even if the
comments were not made close to the termination decision and were too remote in
time or too attenuated to constitute direct evidence of discrimination." *Jenkins v.*

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

*Nell*, 26 F.4th 1243, 1251 (11th Cir. 2022) (*citing Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir. 1998)).

Moreover, contrary to the District Court's assertion, King did not merely present evidence that Drennon used "an offensive term" or transferred King's duties to a white man "without more[.]" Rather, he showed the existence of multiple facts, supported by evidence, that "present[] factual and credibility disputes which require a jury to resolve and 'would allow a jury to infer intentional discrimination,'" such that summary judgment was improper. *See Jenkins*, 26 F.4th at 1251 (*citing Smith*, 644 F.3d at 1328). *See also Smith*, 644 F.3d at 1328 ("[N]o matter its form, so long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper.").

King presented evidence that, the City sought to install white leadership in SPD, and shortly after taking over as Chief, Drennon: reorganized the department; terminated or removed half of the minority supervisors from supervisory positions; and lightened the workloads of white supervisors by dumping their duties on King, such that he was given more to do than any one person ever could and was set up for failure. Shortly thereafter, Drennon made racist remarks in the workplace, and soon after making those statements demoted King from captain to sergeant for false and pretextual reasons. Further Drennon gave King's former duties as captain to a white

48

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

officer, Brooks. In addition, Drennon treated Brooks more favorably than King by
failing to discipline Brooks for not tending to officer reports and failing to discipline
him for dereliction of duty, when he should have been patrolling and answering calls.
In contrast, when he received an incredible complaint from a white drug dealer and
his friends that King was parked near their home, Drennon terminated his
employment.

King also presented evidence that Sgt. White's racial bias infected her
investigation into King and the resulting termination. Specifically, King presented
evidence that: (1) White, like Drennon, used racist language on multiple occasions,
including in the workplace; (2) while conducting her investigation of King, White
knew of at least one of the white witnesses' credibility problems, ignored other
glaring credibility issues, and nevertheless credited the white witnesses' plainly
incredible statements over King's the truthful statements; (3) White admittedly
conducted her investigation of King in a manner that was improper, lying to King;
(4) White generated a report on the investigation that she admits misstated the facts;
and (5) Drennon reviewed and agreed with White's investigation and report in
terminating King's employment. The District Court did not consider this evidence
in its "convincing mosaic" or mixed-motive analyses.

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

Further, the District Court erred in that, when analyzing the "convincing mosaic" and mixed-motive theories, it wholly failed to consider both Drennon's disparate treatment of Brooks and King and Drennon's acceptance of demonstrably incredible statements from the white witnesses over King's version of what occurred.

On this record, multiple issues of material fact remain for trial, and the District Court's grant of summary judgment was improper.

**D.    Legal standard to establish a claim for retaliation under Title VII, 42 U.S.C. §1981, and FMLA**

Retaliation claims under Title VII, 42 U.S.C. §1981, and FMLA are examined using the same *McDonnell Douglas* framework.[6] *See Shannon*, 774 Fed. Appx. at 542; *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir. 2000). To make out a *prima facie* case of retaliation, King must show that: "(1) []he

---

[6] Of course, what constitutes "statutorily protected activity" will vary based on the claim asserted. For purposes of King's retaliation claims under Title VII and §1981, the protected activity was his filing an EEOC Charge. For purposes of his retaliation claims under FMLA, the protected activity was King taking FMLA leave. *See Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1267 (11th Cir. 2017) (in FMLA retaliation claims, employees assert that the employer discriminated against them "because [they] engaged in activity protected by the Act."). *See also* 29 U.S.C. §2612(a)(1)(D) (granting eligible employees the right to take FMLA leave for certain reasons); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006).

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

engaged in statutorily protected activity; (2) []he suffered a materially adverse action; and (3) there is a causal connection between the protected activity and the materially adverse action." *Shannon*, 774 Fed. Appx. at 542 (*citing Brown v. Ala. Dep't of Transp.,* 597 F.3d 1160, 1181 (11th Cir. 2010)); *Brungart*, 231 F.3d at 798. If the plaintiff makes this showing and the employer "proffers a legitimate, nondiscriminatory reason for its actions, then the plaintiff must show that the reason given is pretextual." *Shannon*, 774 Fed. Appx. at 542; *Hurlbert*, 439 F.3d at 1297.

The Eleventh Circuit "construes the causal connection element broadly, requiring a plaintiff to prove only that 'the protected activity and the negative employment action are not completely unrelated.'" *Shannon*, 774 Fed. Appx. at 542-43 (*citing Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1260 (11th Cir. 2012)); *Brungart*, 231 F.3d at 799 (*citing Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)). "In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart*, 231 F.3d at 799 (*citing Clover*, 176 F.3d at 1354). The "general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of causal connection." *Id.* (*citing Bechtel Const. Co. v. Sec. of Labor*, 50 F.3d 926,

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

934 (11th Cir. 1995)("Proximity in time is sufficient to raise an inference of causation.")). A plaintiff may prove the causal connection by showing "that the decisionmaker was aware of the plaintiff's protected conduct at the time of the materially adverse action." *Shannon*, 774 Fed. Appx. at 543 (*citing Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir 2008)).

**E.    The District Court erred in granting summary judgment to Appellees on King's retaliation claims.**

With respect to King's FMLA retaliation claim, the District Court properly found that King made out a *prima facie* case of retaliation. [Doc. 68 at 22-23.] With respect to King's Title VII and §1981 retaliation claims, the District Court erroneously found that King failed to make out a *prima facie* case. [*Id*. at 20-22.] In addition, the District Court granted summary judgment on each of King's retaliation claims because it found that "Plaintiff's misconduct on May 30, 2019, constitutes an intervening act 'breaki[ing] any causal link between the protected conduct and the adverse employment action'" and found that "Plaintiff has not shown that this reason was pretext." [*Id*. at 21-23.] These findings were also erroneous.

**1.    King made out a *prima facie* retaliation case under Title VII and §1981.**

The District Court properly found that the first two elements of King's *prima facie* case of retaliation under Title VII and §1981 were met because he filed an

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

EEOC Charge on March 27, 2019 and suffered an adverse employment action when

he was fired on June 6, 2019. [Doc. 68 at 21.] However, the District Court conflated

the issue of whether King presented evidence showing a causal connection between

the EEOC charge and his termination sufficient to make out a *prima facie* case with

the separate question of whether the temporal proximity between the two events was

sufficient evidence, standing alone, of pretext to overcome Appellees' assertion of a

purportedly legitimate reason for the termination. *Id*.

When making the initial showing of a causal connection necessary to support

a *prima facie* case, "close temporal proximity between protected conduct and an

adverse employment action is generally 'sufficient circumstantial evidence to create

a genuine issue of material fact of a causal connection.'" *Hurlbert*, 439 F.3d at 1298

(*quoting Brungart*, 231 F.3d at 799). "An exception to this rule applies where there

is 'unrebutted evidence that the decisionmaker did not have knowledge that the

employee engaged in protected conduct." *Id*. However, here, Drennon admitted

during his deposition that he was aware of King's EEOC charge when he terminated

King. [Doc. 54 at 167:23 – 168:4.]

King was fired only 71 days after he filed his EEOC Charge. The close

temporal proximity between King filing a Charge and King's termination is,

standing alone, sufficient to prove causation for purposes of his *prima facie*

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

retaliation case, and the District Court's conclusion to the contrary was erroneous.

*See Hurlbert*, 439 F.3d at 1298; *Wesolowski v. Napolitano*, 2 F.Supp.3d 1318, 1341

(S.D. Ga. Feb. 27, 2014) (two months between complaint and adverse action

sufficient temporal proximity to establish causation); *Christopher v. Gannett*

*Satellite Information Network, Inc.*, 2007 WL 1626099 (M.D. Fla. Jun. 5, 2007). *See*

*also Gary v. Hale*, 212 Fed. Appx. 952, 958 n.3 (11th Cir. 2007) ("where there is

actual and direct evidence of the decision-maker's awareness [of the protected

activity], there is no need to rely upon circumstantial evidence, such as temporal

proximity"); *Shannon*, 774 Fed. Appx. at 543.

The causation argument is further strengthened by the fact that on April 24,

2019, only 28 days after King filed his EEOC Charge and while King was on FMLA

leave, Drennon and White began padding King's personnel file with memoranda

documenting additional alleged performance deficiencies. [Docs. 50-14 & 50-15.]

On May 28, 2019, Drennon added another letter to King's personnel file. [Doc. 54

at 120:13-124:16, 125:10 – 126:3; Doc. 50-15, pp.7-9.] The email in which he sent

the letter to the City's human resources office was titled "Additional Documentation

on EEOC complaint by Demetric King," and at his deposition, *Drennon admitted he*

*was creating these documents in reaction to King's EEOC complaint*. [Doc. 50-15,

p. 7; Doc. 54 at 124:13-16.] In one of the memoranda, Drennon reviewed and

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

summarized King's personnel file, drawing inaccurate conclusions from what was there. [Doc. 50-15 at 2-6; *compare* Doc. 50-28, ¶¶5-16, 21-23, 27-31 and Washington Dep. 9:18 – 16:15, 35:16 – 36:22, Exhibit B.] In other words, Drennon used the opportunity of King's FMLA leave to pad his file and create reasons to terminate him.

Evidence sufficient to show a genuine dispute of material fact as to causation in his *prima facie* case of Title VII and §1981 retaliation exists based on temporal proximity and Drennon's admitted knowledge of King's EEOC Charge.

> **2.    King presented evidence showing that the May 30, 2019 incident was pretext to justify his unlawful termination.**

Putting aside the issue of whether King made out a *prima facie* case of retaliation, pursuant to Title VII and §1981, the District Court found that these claims, as well has his FMLA retaliation claim failed because: (1) the May 30, 2019 incident constituted a legitimate, non-retaliatory business reason for the termination and broke any causal link between the protected conduct and the adverse employment action; and (2) King failed to show that Appellees' asserted reasons for the termination were pretext. [Doc. 68 at 21-23.] In reaching these conclusions, the District Court did not re-analyze the evidence before it. Rather, it relied upon its

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

previous findings, concerning King's race discrimination claims, that King failed to present evidence of pretext. [*Id*.]

As shown above, King presented evidence that would permit a reasonable jury to conclude that the reasons cited by Appellees for his termination were pretextual. For the same reasons, the District Court's conclusion that King failed to show pretext, with respect to his retaliation claims, was error.

Further, Drennon's conduct during King's FMLA leave is evidence that Drennon was upset by the fact of the FMLA leave and/or his EEOC Charge and was searching for a pretextual justification to terminate King. This includes both padding King's personnel file, as discussed above, and conduct specific to the FMLA leave. While King was on FMLA leave, Drennon repeatedly contacted him about work issues, sent SPD personnel to King's home to retrieve King's patrol vehicle, and had a GPS device installed on the vehicle. [Doc. 43 at 34:10-20, 102:7 – 104:6, 148:13 – 151:15; Doc. 50-28, ¶¶33-34.] Also, Drennon sent Lt. Brooks to King's house to demand a response as to when King would return to work. [Doc. 50-28, ¶33.]

**F.    The District Court erred in granting summary judgment on King's punitive damages claim.**

King asserted a claim for punitive damages against Drennon, pursuant to 42 U.S.C. §1983, based upon his race discrimination claim. Because it found that

56

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

King's §1983 race discrimination claim against Drennon did "not survive summary judgment," it found that "his claim for punitive damages also fails." [Doc.68 at 20.] As shown above, the District Court's grant of summary judgment on King's race discrimination claims was erroneous, and genuine disputes of material fact remain for trial on those claims. Accordingly, the District Court's ruling on King's claim for punitive damages against Drennon must also be reversed.

## VI.    **CONCLUSION**

King presented evidence that: the City specifically sought to install white leadership in SPD; Drennon used a restructuring process to eliminate persons of color from supervisory positions; and Drennon lightened the workload of white supervisors by foisting their prior duties onto King, overburdening him and setting him up for failure. Drennon used racist language in the workplace, demonstrating bias against non-whites, and soon thereafter, demoted King for false and pretextual reasons. Meanwhile, he treated a white supervisor, Brooks, more favorably than King under similar circumstances.

After King filed an EEOC Charge and was on FMLA leave, Drennon began padding King's personnel file to later justify his termination, and Drennon admits he did so because of King's EEOC Charge. Drennon also engaged in conduct showing his displeasure with King for taking FMLA leave.

57

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

Less than a week after he returned from FMLA leave, King was falsely accused of misconduct by demonstrably incredible white witnesses, including a known drug-dealer with an obvious motive to remove police officers from the vicinity of his home. King was investigated by a white officer, with her own history of racist statements, who admits she engaged in misconduct during the investigation and prepared a report that misstated the facts. She knew that at least one of the white witnesses was a convicted drug dealer, turned a blind eye to the white witnesses' other credibility problems, and issued a report crediting those white witnesses' story over the truthful statements from King, a Black man. Drennon reviewed her report and investigation and, likewise, adopted the white witnesses' incredible version of the story over King's, then relied on this as a pretextual justification to terminate King.

King presented evidence showing the existence of genuine disputes of material fact for trial, which would permit a reasonable jury to find in his favor on each of his discrimination, retaliation, and punitive damages claims. Nevertheless, the District Court, giving only surface treatment to the evidence and the law, granted summary judgment to Appellees. In doing so, as shown herein, the District Court made multiple fact errors (including relying on supposed facts that were contrary to the evidence), failed to draw all reasonable inferences in favor of King as the

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

nonmovant, and made legal errors. Accordingly, for all the foregoing reasons, the

District Court's order and judgment, granting summary judgment, should be

reversed.

Respectfully submitted this 23rd day of November, 2022.

**BUCKLEY BEAL, LLP**

*/s/ J. Kyle Brooks*
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleybeal.com
J.  Kyle Brooks
Georgia Bar. No. 773561
kbrooks@buckleybeal.com
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

*Counsel for Appellant Demetric King*

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

## **CERTIFICATE OF COMPLIANCE**

1. Counsel for Appellant hereby certifies that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f) and 11th Cir. R. 32-4, this document contains 12,982 words.

2. This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

**BUCKLEY BEAL, LLP**

*/s/ J. Kyle Brooks*
J. Kyle Brooks
kbrooks@buckleybeal.com
Georgia Bar No. 773561

600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

*Counsel for Appellant Demetric King*
Dated: November 23, 2022

Demetric King v. City of Sylvester, Georgia et al.
Docket No. 22-11433-AA

## **CERTIFICATE OF SERVICE**

This is to certify that I have this 23rd day of November, 2022 filed the foregoing **Initial Brief of Appellant** with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

> Frances L. Clay
> fclay@chrkglaw.com
> Chambless, Higdon, Richardson, Katz & Griggs, LLP
> P.O. Box 18086
> Macon, Georgia 31209-8086

I have delivered four paper copies of the foregoing **Initial Brief of Appellant** to the clerk via courier and mailed one paper copy to counsel for Defendant-Appellee via first-class mail, postage prepaid at the above addresses.

*/s/ J. Kyle Brooks*
J. Kyle Brooks
Georgia Bar No. 773561
kbrooks@buckleybeal.com

BUCKLEY BEAL, LLP
600 Peachtree Street, NE, Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101
*Counsel for Appellant*